## GRANT *against* SEITSINGER.

An agent appointed to collect money, shall not buy a note of his principal at a dis-
count, and retain the whole amount of it out of the money collected; but shall
only retain the amount which he gave for the note.    An agent must deal fairly
with his principal.

If he who puts a note into the hands of an agent for collection, is but an agent him-
self; he who collects the money cannot retain at all, if he is aware of the circum-
stances; he who is ultimately entitled to the money, may revoke the power of
him who was appointed to receive the money at any time, although the evidence
of the debt to be collected, was a note to his agent.

Error to the Common Pleas of *Northumberland* county.

An action for money had and received, was brought by *George
Grant* against *Jacob W. Seilsinger;* the cause having been or-
dered for trial, the defendant confessed a judgment for the amount
of the plaintiff's claim, upon the following agreement being enter-
ed into by the parties in interest.

"An issue to be formed, upon which it shall be left to a jury to
determine, whether *George Grant* or *Lyon's* executors be enti-
tled to any part of the money, and if so, to how much, and whe-
ther *Seitsinger* be entitled to retain any portion, either on account
of *Kepple's* note and the expenses of collection, or any other ac-
count whatsoever."

It was upon the trial of this feigned issue, that the questions in
this case arose: the facts of the case are so fully stated in the opin-
ion of his Honor, who delivered that of the Court, that they need
not be repeated here.

*Bellas* and *Greenough,* for plaintiff in error.

*Donnel,* for defendant in error.

The opinion of the Court was delivered by

Kennedy, J.—*Edward Lyon* in his life-time, had authorized
the plaintiff *George Grant,* to receive some money coming to
him from *James L. Dunn.*    By this authority, *Grant* called
upon *Dunn,* who not being able to pay the money, then gave his
note for it, payable to *Grant's* order.    This note was retained by
*Grant,* for the purpose of collecting the money upon it, until *Ly-
on's* death.    After this, *Grant* indorsed the note and gave it to
the defendant *Jacob W. Seitsinger,* merely for the purpose of de-
manding and receiving the amount due on it.    *Seitsinger* brought
a suit upon the note, against *Dunn,* obtained a judgment against
him, and afterwards received the money.    At the time *Grant* gave
the note to *Seitsinger,* or at least before *Seitsinger* received any
money on account of it, he told *Seitsinger* that the money men-
tioned in the note, belonged to the estate of *Lyon.*    After *Seit-*

(Grant *v.* Seitsinger)

*singer* had thus received the note of *Grant* for collection, he got a note of *Grant's* for fifty two dollars, from one *Thomas Kepple*, dated April 12th, 1820, payable to his order on demand; this note was indorsed by *Kepple* to *Seitsinger*; *Seitsinger* pretended some other claim beside this against *Grant*, and told him, before any of the money had been collected from *Dunn*, that he intended to keep his claim against him *(Grant)* out of it; to which *Grant* replied that he could not do that, for the whole of the money was coming to *Lyon's* estate; that no part of it belonged to him. Before this, as *Seitsinger* alleged, *Grant* had said that *Lyon's* estate was indebted to him, and he intended to keep the money. The amount of money received by *Seitsinger* from *Dunn*, exceeded two hundred and thirty dollars, for which a judgment was confessed by *Seitsinger*, without prejudice to either party, and subject to an agreement, that a feigned issue should be formed, to determine whether *Grant*, *Lyon's* executors or *Seitsinger*, or any one or all of them were entitled to the money; and if more than one of them, whom, and in what proportions. It was again agreed by all the parties concerned, that the foregoing question should be tried without formal pleadings. Upon the trial no evidence was offered, to show that *Grant* had any claim against the estate of *Lyon*, or any concern or right to the money, other than an order from *Lyon* in his life-time, to demand and receive it for *Lyon's* own use, so that the contest remained between *Lyon's* executors and *Seitsinger*. In the course of the trial, the counsel for *Lyon's* executors offered in evidence the deposition of *James L. Dunn*, which had been taken under a rule of court, but without notice to *Jacob W. Seitsinger* or his attorney. It was offered for the purpose of showing, that *George Grant* was the agent of *Edward Lyon* to collect the money from *James L. Dunn*, and that it was a debt owing by *Dunn* to *Lyon*, and not to *Grant*; the counsel offering it, also stipulating at the same time, that if admitted in evidence it should not affect *Seitsinger*, but should only be used as evidence to settle the question between *Grant* and *Lyon's* executors. This was objected to by the counsel for *Seitsinger*, and the testimony was over-ruled by the court. To this decision of the court, the counsel for *Lyon's* executors excepted, which is the first error assigned.

There was certainly no error in rejecting this deposition, because it went to show that *Grant* had no claim or right of his own to the money, which struck at the very root of *Seitsinger's* claim, who was a party to the issue trying, and had a right to insist that no testimony should be given to the jury, that had a tendency to determine their minds against him, on the question which formed the very pivot upon which his claim to the money turned, without an opportunity of a cross-examination being afforded to him.

(Grant *v.* Seitsinger.)

Neither do I conceive that there was any error in the admission of the note in evidence, which had been drawn by *Grant* in favour of *Kipple*, and by him assigned to *Seitsinger*. Although the law would not permit *Seitsinger* to retain the amount of this note out of the money, if it belonged to the executors of *Lyon*, yet that question, whether it was *Lyon's* money or not, was a fact to be decided by the jury; and as they decided that, they were to find in favour or against *Seitsinger's* claim. Because, I think, that in case the jury had been convinced that the money belonged to *Grant*, and not to *Lyon's* executors, it would have been their duty to have allowed *Seitsinger* out of the money, what he paid for the note, and no more: I say no more, because an agent or mere trustee, ought never to be permitted to speculate on and make profit out of the funds or moneys of his principal or *cestui que trust*, without accounting for it. With this view of the subject in controversy I think the note was admissible evidence.

The third and last error assigned is, that the court below erred in answering the first, third, fourth and fifth points, submitted by the counsel on behalf of *Lyon's* executors. The court in answer to the first, third and fourth points, charged the jury in substance, that if *Seitsinger* purchased and obtained the note of *Kipple* against *Grant*, upon the faith that the money coming from *Dunn*, would come into his hands, before he knew that the money belonged to *Lyon*, or his executors, he was entitled to have or retain the amount of it out of the money collected from *Dunn*, and that too, whether the money belonged to *Grant* or to *Lyon's* executors. In this opinion of the court, there was error. It must appear to every man of common sense, upon the first blush, that it would be highly unjust, that the moneys of *Edward Lyon* or his executors, should be appropriated, without their consent at least, to the payment of *George Grant's* debts. But it is said by the court below, that if *Seitsinger* purchased the note from *Kipple*, upon the faith, that he would be paid out of this money when collected, then *Lyon* ought, as between him and *Seitsinger* to bear the loss if any, and *Seitsinger* should be entitled to retain the amount of the note. It is difficult to conceive of any just ground, upon which *Seitsinger*, who was merely the agent of *Grant*, and had no right whatever, to any part of the money coming from *Dunn*, but a mere naked authority to demand and receive it for *Grant*, could have been impressed with an idea or confidence, that he had a right to dispose of it, or to give himself a lien or claim upon it, without the consent of *Grant*, even supposing it had been *Grant's*. Nobody can doubt, but that the authority conferred by *Grant* upon *Seitsinger*, to collect this money of *Dunn*, was revocable; but if *Seitsinger* could purchase up outstanding debts

67

(Grant *v.* Seitsinger.)

against *Grant,* in expectation, or upon the faith, as the court be-
low told the jury, that he would thereby acquire a right to have
the money, for the purpose of satisfying such notes, it would be
to make his power irrevocable, and to give him a right to receive
the money in despite of *Grant.* If *Seitsinger* had intended to
act fairly with *Grant,* and safely for himself, he, before he pur-
chased this note of fifty two dollars against *Grant,* would have
first spoken to *Grant,* and made known to him that he was about
to do so; and if upon his doing so, *Grant* had told him to get it if
he could, and take the amount of it, out of the money coming
to *Dunn,* as soon as collected, he might then have said with some
propriety, that he had taken the note, upon the faith of his getting
the amount out of that fund when received, and if the money due
·from *Dunn,* had been coming from *Grant* in his own right, *Seit-
singer* would have been entitled to it. *Seitsinger* had no author-
ity to receive this money, that *Grant* could not have revoked or
set aside at any time, either before or after *Seitsinger* got the note
of *Kipple,* and I will go further, and say, that *Lyon's* executors
might have interposed, and prevented either *Grant* or *Seitsinger*
from receiving it, as neither of them ever had any right to it. In
support of this position, see *Barber* v. *Prentiss,* 6 *Mass. Rep.*
430. *Herrick* v. *Carman,* 10 *Johns. Rep.* 224. *Cornstock* v.
*Hoog et al.,* 5 *Wend.* 600.

Judgment reversed and a *venire de novo* awarded.